UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELFINA SOTO SOTO,<br>　　　　Plaintiff,<br>　　v.<br>JEFF SESSIONS, et al.,<br>　　　　Defendants. | Case No. 18-cv-02891-EMC<br><br>**ORDER DENYING PETITION FOR HABEAS CORPUS** |

Petitioner Delfina Soto Soto is an alien currently detained by Immigration and Customs Enforcement ("ICE"), a division of the United States Department of Homeland Security ("DHS"). Pet ¶ 1. She argues that her detention is indefinite in violation of her due process rights. She filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking either a new bond hearing for prolonged detention where the government would bear the burden to prove flight risk or danger to the community or, alternatively, immediate release. The government filed a return in opposition; Ms. Soto did not file a traverse. Both parties submitted supplemental briefing as ordered by the Court. The matter came before the Court on June 28, 2018. Thereafter, Ms. Soto filed a supplemental brief which the Court has considered although Ms. Soto failed to seek leave of Court before doing so. *See* Local Civ. R. 7-3(d) ("Once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval[.]").

For the reasons below, the Court **DENIES** Ms. Soto's requests for both a bond hearing and for immediate release.

### I.　　FACTUAL & PROCEDURAL BACKGROUND

Under 28 U.S.C. § 2248, "[t]he allegations of a return to the writ of habeas corpus . . . if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence

that they are not true." 28 U.S.C. § 2248. As Ms. Soto did not file a traverse, the government's factual contentions are taken as true unless contradicted by evidence.

Ms. Soto is a Mexican national who entered the United States without inspection on or after December 27, 2012. Pet ¶ 9; Exh. B.[1] She has been detained by ICE since November 28, 2017. Pet ¶ 9. Ms. Soto is detained pursuant to 8 U.S.C. § 1226(a), which provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (codifying Immigration and Nationality Act (INA) § 236(a)).

There is a warrant for Ms. Soto for aggravated kidnapping issued by a trial court in Michoacán, Mexico. Exh. C. An INTERPOL Red Notice (request to locate and provisionally arrest an individual pending extradition) was issued for Ms. Soto on November 12, 2015 and last updated on January 26, 2018. Exh. D. The Red Notice indicates the kidnapping resulted in the death of a five-year-old minor. *Id.* Ms. Soto alleges that she was tortured during the interrogation that prompted the Mexican arrest warrant. Exh. N.

Ms. Soto was afforded an initial bond hearing on March 7, 2018. Exhs. K-L. The hearing was originally set for Dec 19, 2017, but was continued, twice at Ms. Soto's request (once for attorney preparation and once to obtain Ms. Soto's Mexican criminal case documents though these were never presented to the immigration judge), once *sua sponte* by the court, and once to obtain a Purépecha interpreter, as Purépecha is Ms. Soto's best language. Exhs. K-L; Morris Dec. ¶ 12. The immigration judge (IJ) denied Ms. Soto's bond request on March 7 because the IJ found her to be a danger to the community and a flight risk. Exh. L; Morris Dec. ¶ 13. Ms. Soto had until April 6, 2018 to appeal the decision to the Board of Immigration Appeals (BIA) but did not do so. Morris Dec. ¶ 13; Exh. L; *see also* 8 CFR § 1003.38(b) (providing 30 calendar days to file an appeal of an IJ's decision with the BIA). Ms. Soto filed a habeas corpus petition with this Court on May 17, 2018. Ms. Soto's habeas petition does not disclose this March 7, 2018 bond hearing.[2]

---

[1] Unless otherwise noted, all exhibits cited are attached to the Declaration of Eben J. Morris, Docket No. 12.

[2] Petitioner's counsel is warned that he has a duty of candor to the Court. *See* Local Civ. R. 11-

2

Since the filing of her petition with this Court, Ms. Soto's removal proceedings have been terminated. In particular, at a master calendar hearing on March 22, 2018, Ms. Soto conceded all factual allegations and the charge of inadmissibility. Morris Dec. ¶ 14. She requested relief from removal and protection under the Convention Against Torture; a merits hearing was scheduled. *Id.*; Exh. N. On May 31, 2018, the IJ terminated Ms. Soto's removal proceedings without prejudice because Ms. Soto could not be provided an interpreter in her best language (Purépecha), and to conduct the hearing without an interpreter would violate her due process rights. Exh. N at 2 (citing *Perez-Lastor v. I.N.S.*, 208 F.3d 773 (9th Cir. 2000)). The government represents that ICE has since appealed this decision to the BIA.

The government concedes that termination of Ms. Soto's proceedings makes her eligible to seek a bond redetermination before the IJ due to materially changed circumstances per 8 C.F.R. §1003.19(e), and that it would not oppose such a request but would oppose Ms. Soto's release on bond. Docket No. 15; Docket No. 17, Hr'g, June 28, 2018. Ms. Soto has not sought a redetermination and instead requests the Court order a new bond hearing where the government (rather than Ms. Soto) bears the burden to show Ms. Soto is a flight risk or a danger to the community. Ms. Soto currently remains in detention pursuant to § 1226(a). Docket No. 15.

## II.     DISCUSSION

Defendants argue that Ms. Soto must exhaust her administrative remedies before seeking relief in this Court. Alternatively, Defendants argue that Ms. Soto's due process rights have not been violated because only three months have passed since her last bond hearing. For the reasons explained below, Ms. Soto need not exhaust her administrative remedies as the process available would be futile. Nevertheless, due process does not require that she be provided another bond hearing at this time. She is not facing indefinite detention, there is no statutory basis for automatic § 1226(a) bond hearings after six months, and due process does not, at this time and on these facts,

---

4(a) (attorneys admitted to this Court must comply with the State Bar of California's standards of professional conduct and "[p]ractice with the honesty, care, and decorum required for the fair and efficient administration of justice"); Cal. Rules of Prof. Conduct, Rule 5-200(B) ("In presenting a matter to a tribunal, a member . . . [s]hall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law[.]"); Cal. Bus. & Prof. Code § 6068(d).

3

require more procedural protections than she has already been provided. It follows that Ms. Soto is not entitled to immediate release, either.

A.  Ms. Soto's Failure to Exhaust Administrative Remedies is Waived for Futility

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). Administrative exhaustion by those seeking relief under § 2241 is a prudential, not jurisdictional, prerequisite in the Ninth Circuit, and can thus be waived. *Trinidad v. Sessions*, No. 3:17-CV-06877-JD, WL 2010618, at *1 (N.D. Cal. Apr. 30, 2018). Futility is one of the grounds for waiver. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). An action is futile if the BIA's view is "already set" or the outcome is "very likely." *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 747-48 (9th Cir. 1991) (holding petitioner need not exhaust administrative remedies to challenge a translation policy which the BIA had announced and reaffirmed).

Here, Ms. Soto's available administrative remedy is futile. Although she can seek a bond redetermination per 8 C.F.R. § 1003.19(e), Ms. Soto will bear the burden as in her initial bond hearing to prove "by clear and convincing evidence" both "that release would not pose a danger to other persons or to property" and that she "is likely to appear for any scheduled proceeding or interview." 8 C.F.R. § 1003.19(h)(3). Bond was denied at the first hearing because Ms. Soto was not able to meet this burden. Exh. L. As she would bear the same burden at a § 1003.19(e) redetermination and no relevant circumstances have changed, it is "very likely" that Ms. Soto will again be denied bond. The fact that the removal proceedings have been terminated without prejudice is not likely to change that calculus. Administrative exhaustion would thus be futile. The Court will consider the merits of Ms. Soto's claim for a bond hearing.

B.  Ms. Soto is Not Entitled to a Bond Hearing at this Time

Ms. Soto argues that her continued detention without a bond hearing violates her procedural due process rights. Pet ¶ 21.

Previously, the Ninth Circuit held in *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015)

that 8 U.S.C. § 1226(a) had to be construed to require automatically provided bond hearings after six months in detention, in order to avoid potential due process problems under the doctrine of constitutional avoidance. In *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the Supreme Court reversed the Ninth Circuit's holding as a mis-application of the canon of constitutional avoidance. The Supreme Court explained that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of" periodic bond hearings where the government bears the burden. *Id.* at 847. The Court did not decide in the absence of a statutory mandate whether the Constitution requires such periodic hearings. That question is currently pending before the Ninth Circuit.[3] Because Petitioner has not identified any binding Ninth Circuit or Supreme Court case-law that establishes Petitioner's categorical right to a periodic bond hearing, the Court must conduct an individualized due process analysis pursuant to the conventional *Mathews v. Eldridge* 424 U.S. 319 (1976) factors.

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334. The three-part test articulated in *Mathews* requires considering (1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been provided in the particular situation before the court. *See id.* at 334-35.

1. Petitioner's Private Interest

Ms. Soto's freedom from detention is at stake. *Rodriguez*, 804 F.3d at 1066. This is an important interest which "lies at the heart of the liberty that [the Due Process] Clause protects" but it is not at its apex in these circumstances, as Ms. Soto has been detained for only slightly over six months total, and for only slightly over three months since her last bond hearing. *Id.* There is a strong interest against indefinite detention but, that is not currently a concern as Ms. Soto is still working through the appropriate process.

---

[3] *See Rodriguez v. Jennings*, 887 F.3d 954 (9th Cir. 2018). However, briefing in *Jennings* will not conclude until the end of July, with oral argument to be scheduled after briefing. *Id.* at 956. The Court will not stay this case pending that decision because a lengthy stay is not warranted when a petitioner may be harmed by prolonged and unlawful detention. *See Yong v. I.N.S.*, 208 F.3d 116, 1120 (9th Cir. 2000) (holding that the District Court abused its authority in staying a § 2241 immigration detention habeas petition pending a relevant Ninth Circuit decision).

In *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001), the Supreme Court held that detention of an alien beyond six months after removal has been ordered and which appears indefinite because removal is not reasonably foreseeable "would raise serious constitutional concerns." Ms. Soto's situation is not analogous to that in *Zadvydas*. Although it is true that her removal proceedings have been terminated and their future is uncertain, her detention does not appear to be potentially indefinite at this time. Ms. Soto is being held under the authority of 8 U.S.C. § 1226(a) "pending a decision" on her removal, and there continues to be movement in her case. ICE has timely appealed the termination of her removal proceedings to the BIA and a decision on whether proceedings will be re-instituted is reasonably foreseeable. Docket No. 17, Hr'g, June 28, 2018. Though Ms. Soto argued in supplemental briefing that the BIA's stated goal for completing an appeal is 150 days, the same report indicates that the average duration is actually "105 days (3½ months)" for detained aliens, as measured "from the day the notice of appeal was filed to the day the BIA's decision was issued." Docket No. 18, Exh. 1 at 43. Thus, there is no specter of indefinite detention.[4]

2. Government Interest

The government's interest in detaining Ms. Soto is twofold. First, the government has an interest in assuring that Ms. Soto will not flee and will appear if ultimately ordered removed. *See* 8 C.F.R. § 236.1(c)(8) (allowing release from detention if the non-citizen "is likely to appear for any further proceeding."); *see also Zadvydas*, 533 U.S. 690 (noting preventing flight is a justification for detention but is weakened where removal is unlikely). Second, the government has an interest in protecting the public from Ms. Soto if she poses a danger to the community. *See* 8 C.F.R. § 236.1(c)(8) (allowing release from detention if the non-citizen "would not pose a danger to property or persons."); *see also Zadvydas*, 533 U.S. 691 ("[the Court] ha[s] upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections.").

The government has argued that Ms. Soto's outstanding warrant in Mexico for aggravated

---

[4] This opinion does not preclude Ms. Soto from filing another petition if her detention in fact becomes prolonged or indefinite at a later time.

kidnapping which resulted in the death of a minor supports her detention without bond. Exhs. C-D. These are legitimate government interests, *see Zadvydas*, 533 U.S. 690 (summarizing that some justifications can outweigh an individual's interest in avoiding physical restraint in narrow, nonpunitive circumstances), although the Court expresses no view on the bona fides of the claim of danger, as that issue is not before the Court.

### 3. The Value of Additional Safeguards

It is useful to recount the procedural protections of which Ms. Soto has already availed herself or which were available to her. Three months ago, in March 2018, she received a bond redetermination hearing before an IJ which included numerous procedural protections. Ms. Soto had the right to request the IJ subpoena witnesses and evidence and to submit her own documents into evidence. 8 C.F.R. §§ 1003.35, 31. It is not clear whether Ms. Soto attempted to take advantage of these protections in order to, *e.g.*, undermine the credibility of the Mexican warrant or introduce other evidence why she posed no flight risk or danger to the community. She presented no evidence about the record of the bond hearing to this Court. Ms. Soto was also represented by an attorney at that proceeding. *See* 8 C.F.R. §§ 1003.16-17; Exhs. B, H, J. Additionally, Ms. Soto had the right to appeal the IJ's adverse bond determination to the BIA, but did not do so. 8 C.F.R. § 1003.38; Morris Dec. ¶ 13; Exh. L. Although Ms. Soto's bond redetermination was not held until 3 months after her initial detention due to four continuances, she sought two of those continuances and a third was for the purpose of seeking an interpreter for her. Exhs. K-L; Morris Dec. ¶ 12.

Ms. Soto does not argue that the bond hearing she received was improperly conducted. Indeed, she did not even disclose that she had already received that hearing in her habeas petition.

The only substantive difference between the hearing Ms. Soto received three months ago and the hearing she seeks now is a shift in the burden of proof from her to the Government. Although in the abstract this could benefit Ms. Soto, she has not submitted any information about the record of her first bond redetermination to suggest that, on the facts of her case, the shift would make any difference to the outcome. *Cf. Mathews*, 424 U.S. 319, 343-45 (1976) (holding that evidentiary hearings are not required prior to the termination of disability benefits as they would

7

add little value); *C. R. v. Seattle Pub. Sch.*, 693 F. App'x 505, 507 (9th Cir. 2017) (finding due process did not require additional procedure of cross examination where this would add little value for petitioner in administrative school hearing); *Sachs v. City of Detroit*, 257 F. Supp. 2d 903 (E.D. Mich. 2003) (denying plaintiff was entitled to additional procedures prior to city's demolition of structures where these procedures would serve little value). It is unclear, for example, if the government relied only on an international warrant (hearsay) to demonstrate danger to the community, and whether Ms. Soto offered any testimony under oath to challenge the warrant which was unrebutted. Thus, while as a theoretical matter a shifted burden could assist an immigration detainee, Ms. Soto has failed to make any showing that she would benefit as a practical matter in the circumstances of her case. *Cf. United States v. Peralta-Sanchez*, 847 F.3d 1124, 1136 (9th Cir.) (holding that providing detainees a right to counsel in expedited removal hearings was not required as it would not add value especially weighed against the cost and the government's interest) *opinion withdrawn on grant of reh'g*, 868 F.3d 852 (9th Cir. 2017), *and on reh'g*, 705 F. App'x 542 (9th Cir. 2017), *cert. denied sub nom. Sanchez v. United States*, 138 S. Ct. 702, 199 L. Ed. 2d 575 (2018).

Furthermore, the due process concerns animating the Ninth Circuit's interpretation of Section 1226(a) which required the Government to offer automatic, periodic hearings where it bore the burden are not present here. The Ninth Circuit noted detainees typically "proceed *pro se,* have limited access to legal resources" and "are not aware of their right to a bond hearing and are poorly equipped to request one." *Rodriguez v. Robbins*, 804 F.3d 1060, 1085 (9th Cir. 2015). In contrast, Ms. Soto is represented by counsel both in her immigration proceedings and in this petition, and is aware of her ability to seek a bond redetermination per § 1003.19(e) should changed circumstances warrant one, and to bring a habeas petition before this Court. Ms. Soto was well-equipped to take advantage of the due process she was afforded.

In sum, Ms. Soto has not demonstrated how a new bond hearing with a shifted burden of proof would add substantial value to her right to a fair and accurate adjudication. She appears to have made little attempt to utilize the due process protections already available to her: it is not clear what arguments or evidence if any she presented at her initial bond redetermination hearing,

and she did not attempt to appeal the denial of bond.  Weighing Ms. Soto's interest, the government's interest, and the value a new bond hearing would add to the procedural protections already provided, the Court concludes that due process does not entitle Ms. Soto to a new bond hearing at this time.

C.  Ms. Soto is Not Entitled to Immediate Release

In the alternative, Ms. Soto argues that her continued detention itself violates her procedural due process rights, and as relief seeks immediate release from detention.  As explained in the previous section, Ms. Soto's due process interests are not strong enough to require a second bond hearing at this time.  It follows that her interests are not strong enough to require her immediate release, either.  This request is **DENIED**.

## III.  CONCLUSION

The Court **DENIES** Ms. Soto's request for a new bond hearing and **DENIES** her request for immediate release.

This order disposes of Docket No. 1.  The Clerk of the Court is directed to enter judgment for Defendants and to close the case.

**IT IS SO ORDERED**.

Dated: July 30, 2018

_____
EDWARD M. CHEN
United States District Judge